ROBERT GILKEY *vs.* INHABITANTS OF WATERTOWN.

Middlesex. Jan. 26. — March 2, 1886.  HOLMES & GARDNER, JJ., absent.

If the location of a way refers to a certain plan, and the description in the location and that on the plan differ, but, taking the description and the plan together, the way can be identified with reasonable certainty, the misdescription will not render the laying out of the way void.

An objection, that the record of county commissioners does not show that there was sufficient notice of the meeting held for adjudicating upon the question of the common convenience and necessity of a way, and of the meeting for locating it, is not open on a bill in equity to restrain an entry upon and appropriation of land for the way, but can be taken only by a petition for a writ of certiorari.

The surveyor of highways of a town, by order of the selectmen, began to build a way within two years after it was relocated by the county commissioners, and built a portion of it; but the town never specifically authorized, by an express vote, the building of the way as laid out. The officers of the town, with its acquiescence, proceeded from time to time to complete other parts of the way. At a meeting of the town, the return of the county commissioners was laid before the town, and the selectmen were instructed to obtain estimates of the cost of grading the way " according to the instructions of the county commissioners in their report thereon, and to report to the town at its next town meeting." The selectmen did not report to the town until more than eight years afterwards, when the town voted to grant a certain sum to be expended in repairing the way, "not having reference to settling any land damages for widening the same, if any should arise." *Held,* that the town took possession of the land for the purpose of constructing the way, within the two years required by the Pub. Sts. *c.* 49, § 88.

BILL IN EQUITY, filed January 16, 1883, to restrain the defendant, its agents and servants, from constructing a wall upon the plaintiff's land, and from cutting off any of his buildings, land, or fences, or interfering with the same, and from proceeding with the construction of a highway as relocated in 1873, the said relocation being alleged to be without due authority of law.

The case was heard by *Field,* J. on the pleadings and the report of a master, and was reserved for the consideration of the full court, such decree to be entered as justice might require. The facts appear in the opinion.

*W. B. Durant,* for the plaintiff.

*J. B. Goodrich & J. J. Sullivan,* for the defendant.

MORTON, C. J. It is doubtful whether a bill of this character can be maintained against a town; but the parties have agreed

that the bill may be regarded and treated as amended so as to be a bill to restrain the officers and agents of the defendant town from entering upon the plaintiff's land and appropriating it for a highway. Thus treating it, we proceed to consider the case upon its merits.

In June, 1873, the county commissioners, upon the petition of the town of Watertown, relocated Arsenal Street in the said town, the location including in the highway the land of the plaintiff which is in dispute. If this location was valid, the plaintiff cannot maintain his suit. He objects that the location is indefinite and uncertain. Looking at the record of the commissioners, it is clear that they intended to locate and describe the highway according to a plan made by Joseph Crafts, which is referred to and made part of the description. If the plan is followed, there is no difficulty in laying out the way on the land, and the location is definite and certain. But there are found to be some discrepancies between the description and the plan, so that the two are not reconcilable.

For instance, by the description the southerly line starts at a fixed point, A, on said plan, and runs two hundred and ninety-three feet and forty-three hundredths, to a point marked B on said plan; thence it turns and runs eastwardly, forming an angle of one hundred and seventy-seven degrees and twenty-two minutes * with the last described line, two thousand and forty-nine feet, to a point marked C on said plan; thence by other lines to the points marked D and E on the plan. If this angle is to be regarded as controlling, the line from point B will not strike the point C, but will run many feet to the south of it, and the continued lines could not strike the points D and E. Indeed, the angle, as defined, is inconsistent with all the other parts of the location, and is also inconsistent with the purpose which the commissioners had in view. They were not laying out a new highway, but were defining the boundaries of an old way, and locating it anew. If the angle is followed, the highway will in a few rods depart entirely from the old way, and create a new road. Looking at the whole record,

---

* The master's report states that the angle at the point B is given on the plan as 172 degrees 22 minutes.

it is clear that the description of the angle was an accidental error.

There are one or two other discrepancies of a similar character. But it has been held that if, taking the whole location together, the description and the plan, the way intended can be identified, and constructed on the ground, with reasonable certainty, misdescriptions will not avoid or vitiate the laying out of the way, any more than what is called *falsa demonstratio* in a deed will avoid the deed. *Wright* v. *Tukey*, 3 Cush. 290, 299. *Henshaw* v. *Hunting*, 1 Gray, 203.

In this case, it is clear that the county commissioners intended, in describing the lines of the way, to follow the plan; they made errors in the description, but, taking the whole record, there is no real difficulty in ascertaining the way they intended to lay out. The record itself furnishes the means of correcting the errors; and we are of opinion that the discrepancies relied on by the plaintiff do not render the location invalid. The plaintiff contends that the location is invalid, because the record of the commissioners does not show that there was sufficient notice of the meeting held for adjudicating upon the question of the common convenience and necessity of the way, and of the meeting for locating it. These objections go to the formality and regularity of the proceedings and record, and do not affect the jurisdiction of the commissioners. It has been repeatedly held that their adjudication cannot be impeached collaterally for such errors, but that the proper remedy is a petition for certiorari, upon which any omissions or errors of form may be cured by amendment, and on which the whole proceedings can be quashed, if the errors are such as to demand it. *Rutland* v. *County Commissioners*, 20 Pick. 71. *Brimmer* v. *Boston*, 102 Mass. 19, and cases cited. *Blake* v. *County Commissioners*, 114 Mass. 583. *Taber* v. *New Bedford*, 135 Mass. 162. Without considering whether these objections would be of any avail to the plaintiff on certiorari, we think they are not open to him on these proceedings.

The plaintiff further contends, that the location is void as to him, because the town did not take possession for the purpose of constructing the way within two years from the time when it had the right to take such possession. St. 1869, *c.* 303. Pub. Sts. *c.* 49, § 88. By the statutes, " an entry for the purpose of

constructing any part of the laying out or alterations shall be deemed a taking of possession of all the lands included in the laying out or alterations made upon the same petition."

The master has found that the surveyor of highways of the town, by order of the selectmen, began to build the road within the two years, and built a part of the easterly portion thereof, but that the town never specifically authorized, by an express vote, the building of the way as laid out by the county commissioners. The executive officers of the town have since then, and up to the time this bill was filed, proceeded from time to time to complete other parts of the way. All of this was done with the acquiescence of the town. At a meeting of the town, held December 29, 1873, the return of the commissioners was laid before the town, and the selectmen were "instructed to obtain estimates of the cost of grading" the way "according to the instructions of the county commissioners in their report thereon, and to report to the town at its next town meeting." For some reason, they did not report until April, 1882, when it was "voted to grant the sum of five thousand dollars to be expended in repairing the street, not having reference to settling any land damages for widening the same, if any should arise."

An entry in fact was made upon the location, for the purpose of constructing the alterations, by the officers and agents of the town, acting on behalf of the town. The alterations were made upon the petition of the town ; upon the return of the commissioners, it was the duty of the town to enter upon and construct the way according to the directions of the return, a duty which it could not escape. The vote of December, 1873, recognized this duty ; the vote of 1882 granted money for the purpose of performing this duty. Although there has not been any formal vote directing the completion of the alterations according to the order of the commissioners, all the facts of the case show that the town recognized its duty to do so, and acquiesced in and approved the acts of its officers in entering upon and constructing the way. These officers have been continuously completing the road on behalf of the town, expending the money of the town, and there is nothing to show that their accounts have not been approved by the town. The town does not repudiate their acts,

but does now insist, and always has insisted, that they were the acts of the town. It has adopted and ratified their acts as the acts of the town. We are of opinion that there was a sufficient entry for the purpose of construction to prevent the location over the plaintiff's land from being avoided.

Upon the whole case, therefore, we are of opinion that the plaintiff cannot maintain his bill. *Bill dismissed.*